UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


    v.                                                  23-CR-57-LJV-JJM
                                                    DECISION & ORDER
MICHAEL E. SWAIN,

        Defendant.

_____

      The defendant, Michael E. Swain, has been indicted on two counts of producing

child pornography in violation of 18 U.S.C. § 2251(a); two counts of distributing child

pornography in violation of 18 U.S.C. § 2252A(a)(2)(A); and one count of corruptly

altering, destroying, mutilating, or concealing evidence in violation of 18 U.S.C.

§ 1512(c)(1).  Docket Item 25.  On June 1, 2023, this Court referred the case to United

States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C.

§ 636(b)(1)(A) and (B).  Docket Item 27.

      On September 21, 2023, Swain moved to suppress evidence seized under three

search warrants issued by United States Magistrate Judge H. Kenneth Schroeder, Jr.,

as well as the statements that Swain made to law enforcement during the search of his

property.[1]  Docket Item 35.  He also moved for an order requiring the government "to

provide . . . a full and entire inventory of every item seized and taken from . . . Swain's

home and computers."  *Id.* at ¶ 163.  The government responded to Swain's motion,

_____

      [1] Swain also moved for various other relief, *see* Docket Item 35, but the only
objections Swain has raised before this Court relate to the recommended denial of his
motions to suppress*, see* Docket Item 52.

Docket Item 36, and Swain replied, Docket Item 40.  Swain then filed a supplemental motion to suppress evidence seized under another search warrant—this one issued by United States Magistrate Judge Michael J. Roemer, Docket Item 44—and the government responded to that supplemental motion, Docket Item 46.

On December 19, 2023, Judge McCarthy issued a Report and Recommendation ("R&R") finding that Swain's motions to suppress should be denied without a hearing. Docket Item 47.  But in light of Swain's request for a "full inventory" of the seized material—a request to which the government apparently had not responded—Judge McCarthy ordered the government "either [to] produce all required inventories of the seized items from the February 21, 2023[,] search warrants for [Swain's] residence and the cellular telephone or [to] confirm in writing that they have been produced."  *Id.* at 14. Judge McCarthy also said that "if necessary, Swain may file a renewed motion to suppress evidence based on the overbroad execution of the February 21, 2023[,] warrants by January 26, 2024."  *Id.*  Swain objected to the R&R on several grounds. Docket Item 48; Docket Item 52 (memorandum in support of objections).  The government then responded to those objections, Docket Item 53, and Swain replied, Docket Item 56.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The court must review *de novo* those portions of a magistrate's recommendations to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge

McCarthy.  Based on that *de novo* review, the Court accepts and adopts Judge

McCarthy's recommendation to deny Swain's motions to suppress without an

evidentiary hearing.  But because the government may not yet have fully complied with

Judge McCarthy's order requiring it to provide Swain with an inventory of the evidence

seized under the search warrants, the Court orders the government to do so as

explained below.  And the denial of Swain's motions to suppress is without prejudice to

any future motion to suppress brought on the basis of any such disclosure.

### BACKGROUND[2]

In December 2022, "a minor female victim . . . contacted the Town of Tonawanda

Police Department" to report that she had been in contact with Swain for years "via

Discord."[3]  Docket Item 3 at ¶¶ 4-5.  The victim further said that "at Swain's request,

[she had] produced and sent [Swain] numerous images of herself," some of which

depicted the victim "naked" or "engaged in lewd acts at Swain's request."  *Id.* at ¶ 5

(some bold and capitalization omitted).  On February 21, 2023, Judge Schroeder signed

three warrants ("the February warrants") authorizing the search of: (1) Swain's

---

[2] The facts in this section are drawn from the search warrants and applications
(including the affidavits of FBI Task Force Officer Eric Schmidt in support of those
applications), Docket Items 36-3 and 46-1; Schmidt's affidavit in support of the criminal
complaint, Docket Item 3; and Swain's affidavit in support of his motion to suppress,
Docket Item 40.  Swain did not raise any factual challenges to Schmidt's affidavits, and
so the Court's determination of the legal issues below does not rely upon the resolution
of any disputed material fact.

[3] Discord is a social media platform that allows for text messaging and video calls
and "has both a desktop . . . application and a mobile . . . application."  Docket Item 3 at
¶ 5 n.1; *see also* Docket Item 47 at 6.

residence; (2) Swain's person for "a cellular phone or electronic device"; and (3) two

Discord accounts.  *See* Docket Item 36-3 at 52, 54, 59, 66.

A week later, on February 28, 2023, law enforcement executed the first and

second of those three warrants.  Docket Item 3 at ¶ 25.  During the search of Swain's

home, FBI Task Force Officer Eric Schmidt and another "officer[]" spoke with Swain.

Docket Item 40 at ¶ 3 (Swain's affidavit).  The officers told Swain that they were there

"to investigate [i]nternet activity at the house," and Swain "immediately" said that he

"wanted to have an attorney."  *Id.*

The officers then "asked . . . if [Swain's] cell phone was on [his] person[,] and

[Swain] provided the phone to the officer."  *Id.*  One of the officers "turned the phone on

and made [a]n indication to [Swain] that he observed that the phone had been factory

reset."  *Id.*  "Questioning then continued," and "[b]ecause of the circumstances, [Swain]

answered the officer's questions although, as indicated, [he] wanted an attorney to be

present."  *Id.*  More specifically, according to Schmidt, Swain "responded affirmatively"

to Schmidt's question about whether he had reset his phone and said he had done so

due to the officers' "privacy invasion."  Docket Item 3 at ¶¶ 25-26.  Schmidt also said

that Swain told them that "he would not be speaking with the interviewing personnel."

*Id.* at ¶ 26.  Swain was not taken into custody that day.  *See* Docket Item 6 (arrest

warrant returned executed on March 1, 2023).

A few months after Swain was indicted, he moved to suppress all evidence

seized by the government pursuant to the February warrants as well as the statements

he made to law enforcement during the search on February 28, 2023.  Docket Item 35

at ¶¶ 136-88.  He also asked the government "to provide to the defense a full and entire

inventory of every item seized and taken from . . . Swain's home and computers." *Id.* at ¶ 163.

Shortly after Swain's motions were argued, Docket Item 41, the government told his attorney that the search warrant for the Discord accounts had never been executed and that on October 25, 2023, Judge Roemer had signed a new warrant ("the October warrant") for the previously identified Discord accounts and some others as well.[4] Docket Item 44 at ¶¶ 4-8; *see* Docket Item 46-1 at 34. Swain then filed a supplemental motion to suppress the evidence obtained from the execution of the October warrant, Docket Item 44, and he asked the government to provide him "all information obtained . . . as a result of the execution of th[at] warrant," *id.* at ¶ 12.

Judge McCarthy then issued the R&R finding that both of Swain's motions should be denied but ordering the government to turn over an inventory of all evidence seized under the February warrants. Docket Item 47. Swain objected to the R&R, *see* Docket Items 48 and 52, and the parties briefed those objections as described above.

## DISCUSSION

## I.    INVENTORY OF EVIDENCE SEIZED

The Court first addresses Swain's request that the government provide a "full and entire inventory of every item" it seized under the warrants. *See* Docket Item 35 at ¶¶ 53, 163; Docket Item 44 at ¶ 12.

---

[4] Apparently, "the initial Discord [s]earch [w]arrant was sent to [the] incorrect email address," and that error was not discovered until after the fourteen-day period for the warrant's execution had lapsed. Docket Item 44 at ¶ 10 (internal quotation marks omitted); Docket Item 46 at 1-2.

In Swain's memorandum in support of his objections to the R&R—which was filed several weeks after the deadline set by Judge McCarthy for the disclosure of the inventory—Swain says that he still "ha[d] not received the inventories" he had requested.  Docket Item 52 at 12.  The government disagrees and says that it gave Swain "an FBI Collected Item Log[ that] documents the items take[n] from [Swain's] residence during the [February 28, 2023,] search."  Docket Item 53 at 18.  The government also says that it sent Swain's counsel an email with "an inventory . . . documenting the items seized from the Discord search warrant[]" and that it has "repeatedly and consistently told [Swain's] counsel that he is welcome to set up an appointment to review the electronic evidence obtained from the search warrants."  *Id.*  But the government notes that because "the search warrant returns from the Discord accounts are voluminous, the review of items is still ongoing" and states that "as additional evidentiary items are located," the government will notify Swain.  *Id.*

This Court will not weigh in on the factual dispute between counsel.  Regardless of what already has or has not been provided, no later than May 31, 2024, the government shall provide Swain with complete inventories of the items it has seized under *both* the February warrants and the October warrant.  If, after that, the government uncovers additional items in connection with its continuing review of the Discord accounts, it shall promptly supplement those inventories.  Swain may file a renewed motion to suppress based on any inventories provided by the government.

## II.    SUPPRESSION OF EVIDENCE SEIZED UNDER WARRANTS

Swain argues that Judge McCarthy erred in recommending the denial of his motion to suppress the evidence seized under the search warrants.  More specifically,

he argues that Judge McCarthy incorrectly determined that Swain lacked standing to challenge the October warrant authorizing a search of the Discord accounts, Docket Item 52 at 11, and that the evidence seized under all warrants should be suppressed because the warrants: (1) were issued without probable cause; (2) lacked sufficient particularity; and (3) were overbroad both on their face and as executed, *id.* at 9-14. This Court disagrees.

### A.      Standing to Challenge the October Warrant

"To establish standing in the Fourth Amendment context, a defendant must prove that he had a legitimate expectation of privacy that was violated by the [g]overnment's conduct." *United States v. Loera*, 333 F. Supp. 3d 172, 179 (E.D.N.Y. 2018) (alterations, citation, and internal quotation marks omitted), *aff'd sub nom. United States v. Guzman Loera*, 24 F.4th 144 (2d Cir. 2022).  That "burden is met only by sworn evidence, in the form of [an] affidavit or testimony, from the defendant or someone with personal knowledge." *Id.* (citation and internal quotation marks omitted).

Judge McCarthy found that because Swain "ha[d] failed to establish standing to suppress th[e October] warrant," Swain's motion to suppress the evidence seized under that warrant should be denied.  Docket Item 47 at 14.  As Judge McCarthy noted, Swain's motion to suppress the evidence seized under the October warrant relied on the standing affidavit that Swain submitted with his first motion to suppress.  *Id.*  But that affidavit referred only to Swain's reasonable expectation of privacy in his residence and in the computer at that residence—not in any Discord accounts.[5]  *See id.*; Docket Item

---

[5] Judge McCarthy also found—and Swain does not contest—that because the government had never executed the February warrant authorizing a search of several Discord accounts, "[a]ny challenge to th[at] search warrant . . . was moot[]."  Docket

40 at ¶¶ 4-5.  In other words, Judge McCarthy found that Swain had not established his interest in the Discord accounts listed in the October warrant.  Docket Item 47 at 14.

In his objections to the R&R, Swain does not directly contest this finding; rather, he says that because Judge McCarthy "seemed to feel that [Swain's s]tanding [a]ffidavit . . . was in some way deficient," Swain would "refile [an] affidavit . . . to show that the Discord search warrants involved the seizure of []information[ in] which . . . Swain, as the purchaser of the [Discord] app and [the] controller of the [Discord] application itself, had a reasonable expectation of privacy."  Docket Item 52 at 11.  But Swain does not seem to have filed any such affidavit.

This Court agrees with Judge McCarthy that because Swain has not submitted sworn evidence that the Discord accounts belonged to him, he has failed to establish standing to challenge the October warrant.  *See Loera*, 333 F. Supp. 3d at 179-80 (holding that because defendant failed to submit sworn evidence that certain accounts were his, he lacked "standing for a motion to suppress"); *United States v. White*, 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018) (holding that defendant "failed to establish standing as required to bring [a] motion to suppress because neither he nor a person with personal knowledge ha[d] demonstrated by sworn evidence that [defendant] had any property or possessory interest in the Facebook account [searched]").  But regardless, and as Judge McCarthy also noted, Swain's arguments in support of suppressing the evidence seized under the October warrant are essentially identical to those he offers in support of his motions to suppress the evidence seized under the

---

Item 47 at 5; *see generally* Docket Item 52.  So any challenge to the February warrants insofar as they authorized a search of the Discord accounts is not at issue here.

February warrants.  Docket Item 47 at 14; *see* Docket Item 52 at 9-14.  So even if Swain had standing to challenge the October warrant, the Court would deny that motion for the reasons that follow.

### B.    Probable Cause

"[A] court reviewing a challenged warrant—whether at the district or appellate level—'must accord considerable deference to the probable cause determination of the issuing magistrate.'"  *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).  "Thus, the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination."  *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "[P]robable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Walczyk*, 496 F.3d at 156 (quoting *Gates*, 462 U.S. at 238).  "This required nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'"  *Clark*, 638 F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)).

A warrant that is issued in "violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule, however."  *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010).  That is, while a determination that a warrant was issued without probable cause *may* require the suppression of the evidence seized under that warrant, the Supreme Court has "recognized an exception to the

exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Galpin*, 720 F.3d 436, 452 (2d Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  There are "four circumstances" in which this "good faith exception to the exclusionary rule" does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned [the magistrate's] judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Id.* (citation omitted); *see also Leon*, 468 U.S. at 923.

Judge McCarthy found that probable cause supported the issuance of the February warrants.  Docket Item 47 at 5-8.  In fact, he noted that "[a]lthough Swain argues that probable cause for the warrants was lacking, [Swain] point[ed] to no specific deficiency" and Judge McCarthy "discern[ed]" none.  *Id.* at 7 (internal citation omitted).  And Judge McCarthy found that "even if the [February] warrants were determined to be unsupported by probable cause, [he] would conclude that the good faith exception applies."  *Id.* at 7-8.

In his objections to the R&R, Swain does not raise any specific issue with Judge McCarthy's findings.  *See* Docket Item 52.  Instead, Swain merely asserts again that "the . . . search warrants [were not supported by] probable cause," *id.* at 14, and he "incorporates by reference the arguments" he previously made regarding his contention that "probable cause was lacking on all of the search warrants," *id.* at 12.

"When a party does not object to a portion of a [magistrate judge's report and recommendation] or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error."  *United States v. Parker*,

2023 WL 6156268, at *1 (W.D.N.Y. Sept. 21, 2023); *see also United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (explaining that the "clearly[ ]erroneous standard . . . applies if a party makes only conclusory or general objections, or simply reiterates his original arguments" (citation and internal quotation marks omitted)). Because Swain offers no new reason why Judge McCarthy erred in finding probable cause to support the issuance of the February warrants, the Court need review Judge McCarthy's determination of that issue only for clear error.  But even considering the issue *de novo*, the Court agrees with Judge McCarthy that probable cause supported the issuance of the warrants.

The warrants were supported by Task Force Officer Schmidt's affidavit, which swore that law enforcement had received a complaint from a minor victim identifying "Michael Swain" as an individual with whom she had communicated for several years on Discord.  Docket Item 36-3 at 14, 16-17; *see also* Docket Item 47 at 6.  According to the victim, Swaim used several different Discord accounts to correspond with her, and over the course of those online communications, Swain solicited and obtained explicit images from her.  Docket Item 36-3 at 16-17.  Schmidt reviewed the victim's Discord account—specifically, her conversations with the individual she identified as Swain—which included some of the explicit content that she had described.  *Id.* at 18-21.  "[A]n administrative subpoena . . . sent to Discord" revealed that the Discord accounts identified by the victim as belonging to Swain were linked to the address where he then resided.  *Id.* at 17-18.

That detailed information from the victim, corroborated by what Schmidt saw on her Discord account and further connected to Swain by the Discord disclosure, was

more than enough to support Judge Schroeder's finding of probable cause.  In other words, this Court agrees with Judge McCarthy that the warrant applications established a "fair probability that contraband or evidence of a crime [would] be found [at Swain's residence, on his phone, and on computers at that residence]."[6]  Docket Item 47 at 6 (quoting *Gates*, 463 U.S. at 238).

Moreover, even if the warrant application had been insufficient, there is no evidence that Judge Schroeder was "misled" or "wholly abandoned his . . . judicial role," nor were the applications or the warrants so obviously deficient so as to "render reliance upon [them] unreasonable."  *See Galpin*, 720 F.3d at 452.  That is, this Court also agrees with Judge McCarthy that even if probable cause did not support issuing the warrants, the good faith exception would apply.  *Id.*; *see* Docket Item 47 at 7-8.

Swain's objection based on the alleged absence of probable cause therefore is overruled.

### C.      Particularity

Swain contends that Judge McCarthy's "finding that particular[ity] is not necessary where a hard drive or a server[] is searched is incorrect" and without "precedent."  Docket Item 52 at 11.  But that mischaracterizes Judge McCarthy's R&R, which specifically acknowledged that "the particularity requirement assumes even greater importance" when a warrant seeks to search an electronic device.  Docket Item

---

[6] As already noted, Swain has not established standing to challenge the October warrant.  But even if he had, the Court notes that Schmidt filed an affidavit in support of the October warrant that summarized substantially same facts he referenced in support of the February warrants.  *See* Docket Item 46-1.  And the Court finds that those facts likewise established probable cause to search the identified Discord accounts.

47 at 10 (quoting *Galpin*, 720 F.3d at 446).  And in any event, this Court agrees with

Judge McCarthy's analysis and recommendation on this issue.

With respect to particularity, the Second Circuit has held that

to be sufficiently particular under the Fourth Amendment, a warrant must
satisfy three requirements.  First, a warrant must identify the specific offense
for which the police have established probable cause.  Second, a warrant
must describe the place to be searched.  Finally, the warrant must specify
the items to be seized by their relation to designated crimes.

*United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal citations and internal

quotation marks omitted), *abrogated on other grounds by Carpenter v. United States*,

585 U.S. 296 (2018).

The February warrants meet all three of those requirements.  First, the warrants

identify specific federal offenses for which law enforcement established probable cause:

18 U.S.C. §§ 2251-2252, 2252A, 2422, all of which relate to child pornography or the

sexual exploitation or enticement of minors.  Docket Item 36-3 at 59, 62-66, 69-72.

Second, the warrants—which incorporate by reference[7] the facts alleged in the attached

application—specify the locations to be searched, namely, Swain's person, his phone,

and his residence.[8]  *Id.* at 59, 62-66, 68.  Finally, the warrants specify the particular

items to be seized: evidence of Swain's commission of the specific child pornography

---

[7] The Second Circuit has upheld warrants that, as here, "incorporat[e] . . . by
reference" an affidavit that "liste[d] the charged crimes, describe[d] the place to be
searched, and designate[d] the information to be seized in connection with the specified
offenses."  *See Ulbricht*, 858 F.3d at 101.

[8] As noted above, the February warrant authorizing a search of specific Discord
accounts was never executed.

and enticement offenses for which law enforcement had established probable cause. [9]

*Id.* at 62-65, 69-72.

Swain is correct that when a warrant authorizes an electronic search of a computer, "the particularity requirement assumes even greater importance." *Galpin*, 720 F. 3d at 446. As the Second Circuit has explained,

> because there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled with millions of innocuous files, "by necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there." . . . There is, thus, "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." This threat demands a heightened sensitivity to the particularity requirement in the context of digital searches.

*Id.* at 447 (internal citations omitted) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010)).

But that "heightened sensitivity" does not mean that all warrants authorizing relatively broad digital searches are necessarily invalid. On the contrary, even "a broad warrant allowing the government to search [the defendant's] laptop for potentially extensive evidence of [specific] crimes does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria." *Ulbricht*, 858 F.3d at 102-03. Indeed, given the very nature of computer searches, "it will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect

---

[9] This Court would uphold the October warrant on particularity grounds for similar reasons: the warrant specified the crimes for which law enforcement has established probable cause—the same ones enumerated above—as well as the particular Discord accounts to be searched. Docket Item 46-1 at 34. And it also specified that only evidence of the listed crimes was to be seized under the warrants. *Id.* at 34, 37-40.

will store information related to the charged crimes."  *Id.* at 102; *see also United States v. Johnson*, 93 F.4th 605, 614 (2d Cir. 2024) (same).  And for that reason, the Second Circuit has upheld warrants that authorized broad searches of defendants' computer hard drives where the warrants sought only evidence related to particular specified crimes.  *See Johnson*, 93 F.4th at 612-616; *Ulbricht*, 838 F.3d at 100-04.

The warrants here did exactly that: they authorized the search of electronic devices for evidence of specified crimes.  Therefore, and because the warrants adequately specified the offenses supported by probable cause, the places to be searched, and the items to be seized, this Court agrees with and adopts Judge McCarthy's finding that they meet the particularity requirement.

### D.    Overbreadth

Swain also argues that the warrants were overbroad—both facially and as executed.  *See* Docket Item 52 at 11-14.

As already noted, "[p]articularity and overbreadth are two distinct legal issues." *United States v. Romain*, 2014 WL 6765831, at *5 (S.D.N.Y. Dec. 1, 2014) (citation and internal quotation marks omitted), *aff'd*, 678 F. App'x 23 (2d Cir. 2017); *see Ulbricht*, 858 F.3d at 102.  "In order to determine whether a warrant is overbroad, [c]ourts must ask whether the warrant authorized the search and seizure as to which there is no probable cause."  *Romain*, 2014 WL 6765831, at *11 (citations and internal quotation marks omitted).  "In other words, a warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'"  *Id.* (alterations in original) (quoting *Galpin*, 720 F.3d at 446).

In *Galpin*, for example, the Second Circuit held that a warrant authorizing a search for "images depicting child sexual activity" was facially overbroad when the issuing judge had found probable cause to believe that the defendant had violated only a law requiring the registration of sex offenders. *Id.* at 448. The court reasoned that because "the warrant neither mention[ed] the luring offense nor incorporated the warrant application," it was "facially overbroad and thus violated the Fourth Amendment." *Id.* (citation omitted).

The warrants here were far different. Unlike the warrant in *Galpin*, these warrants were based on probable cause to believe the Swain had violated federal laws proscribing child pornography and the sexual exploitation of children, and they authorized searches only for evidence of those specified crimes. *See* Docket Item 36-3; Docket Item 46-1. So unlike the warrant in *Galpin*, the warrants here are not overbroad—at least on their face.

Swain's contention that the warrants were executed in an overbroad fashion is another matter. Courts have held that "[l]ike all activities governed by the Fourth Amendment, the execution of a search warrant must be reasonable." *United States v. Hadden*, 2022 WL 1409600, at *4 (S.D.N.Y. May 4, 2022); *see also United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012). Swain has not shown the warrants in fact were executed in an unconstitutional manner, but his ability to make that showing may have been compromised by the government's failure to turn over an inventory of all material seized under the warrants. *See* Section I, *supra*. So as previously stated, the denial of Swain's motion to suppress is without prejudice to a future challenge to the execution of the warrants.

16

## III.   SUPPRESSION OF SWAIN'S STATEMENTS

Swain also challenges Judge McCarthy's recommendation that this Court deny his motion to suppress the statements he made on February 28, 2023.  Docket Item 52 at 7-9.  Swain says that any statements made after he "unequivocally indicated to a police officer that he wished to have counsel present and that he did not want to speak with them" should be suppressed.  *Id.* at 7.  He argues that Judge McCarthy erred in finding that those requests for counsel were "totally irrelevant" because "Swain was not 'in custody' at the time of the statements."  *Id.*  And he says that Judge McCarthy's analysis "conflates [the] Sixth Amendment right to counsel" with the "Fifth Amendment right not to incriminate [oneself]."  *Id.*; *see also id.* at 9.  In essence, Swain's argument seems to be that (1) he was "seized and therefore in custody," such that the failure to honor his request for counsel was a violation of his constitutional rights, and (2) "even if . . . [the February 28, 2023, encounter] was not a custodial interrogation, . . . Swain's assertion of his right to counsel should have been honored, not completely ignored."  *Id.* at 9.

The government responds that "[i]t is well established that *Miranda* warnings are only necessary when a person is under custodial interrogation," Docket Item 53 at 9 (citations omitted), and that Swain clearly was not "in custody" when he made the statements at issue, *id.* at 10-11.  And it says that Swain's argument that "the questioning . . . violated his Sixth Amendment right to counsel, or somehow violated a hybrid combination of both his Fifth and Sixth Amendment rights," are "equally without merit."[10]  *Id.* at 11.

---

[10] The government also says that Swain raised the argument about a violation of his Sixth—or Fifth and Sixth—Amendment right to counsel for the first time in his

For the reasons that follow, the Court agrees with the government and Judge McCarthy.

### A.   Custodial Interrogation

"[A] person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).   When a defendant moves to suppress statements under *Miranda*, "the burden initially falls on the defendant to demonstrate that he was subject to custodial interrogation, and then shifts, once the defendant establishes a basis for [the] motion, to the [g]overnment to prove, by a preponderance of the evidence, the legality of the actions of its officers."   *United States v. Palase*, 2014 WL 6802560, at *4 (E.D.N.Y. Dec. 2, 2014) (citations omitted).

Deciding whether a suspect is "in custody" for the purposes of *Miranda* involves "[t]wo discrete inquiries":

> [F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt . . . not at liberty to terminate the interrogation and leave.   Once the scene

---

objections.   Docket Item 53 at 11.   But in his first motion to suppress, Swain contended that "[b]ecause [he] had unequivocally indicated that he wanted counsel and because he had the right to counsel, all questioning should have ended and . . . Swain's constitutional right to counsel should have been acknowledged. It was not."   Docket Item 35 at 68.   Therefore, Swain indeed raised this argument before Judge McCarthy and this Court will consider it.   *Cf. United States v. Hunt*, 440 F. Supp. 3d 221, 224 (W.D.N.Y. 2020) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1985)).  The Second Circuit has described this as "a two-step, objective test[] that asks whether: (1) a reasonable person in the defendant's position would have understood that [the defendant] was free to leave; and (2) there was a restraint of freedom of movement akin to that associated with a formal arrest."  *United States v. Santillan*, 902 F.3d 49, 60 (2d Cir. 2018)).  The "circumstances" to be considered in making this determination include:

> the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion.

*United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011).

Here, Swain was questioned in his home[11] by two law enforcement officers. Docket Item 40 at ¶¶ 3-4.  Swain does not specify the length of this interrogation or say whether he was told that he could leave.  *See id.*  But he says that the exchange took place after the officers had explained their purpose for being on the premises—namely, to "investigate [i]nternet activity at the house."  *Id.* at ¶ 3.  And he says that he was questioned after he explicitly told the officers that he "wanted to have an attorney."  *Id.*

---

[11] Swain refers to the place he was questioned as "home," and he states that he had "resided [there] for a substantial period of time with [his] girlfriend and her mother." Docket Item 40 at ¶¶ 3-4.

Those facts do not meet Swain's burden of showing that he was subject to a custodial interrogation. Of primary importance is the setting of the interrogation: Swain's own residence. The Second Circuit has held that "[a]bsent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial." *United States v. Familetti*, 878 F.3d 53, 60 (2d Cir. 2017) (quoting *United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004)); *see United States v. Faux*, 828 F.3d 130, 135-36 (collecting cases). Courts have found that the general rule applies except "in extreme or unusual circumstances." *See United States v. Vado*, 87 F. Supp. 3d 472, 479 (S.D.N.Y. 2015). In *United States v. Newton*, for instance, the Second Circuit found that an interrogation in the defendant's home was nonetheless custodial because the defendant had actually been handcuffed when he was questioned. 369 F.3d at 675-77.

Absent such evidence obviously establishing custody, interrogations in a defendant's home have been found not to be custodial. In *Familetti*, for example, the defendant moved to suppress statements that he made during a search of his home. 878 F.3d at 57. The defendant had been handcuffed when the search began, but he was "not restrained when . . . two agents sat with him in his bedroom to discuss cooperation; the agents' weapons were never drawn; and the pre-*Miranda* interview lasted at most several minutes." *Id.* at 61. Under those circumstances, the Second Circuit found that he had not been subject to custodial interrogation. *Id.* at 62 Similarly, in *United States v. Faux*, the Second Circuit concluded that a defendant interviewed in her home during a search was not "in custody," even though "about a dozen" agents were in her home; she "was physically separated from her husband"; she "was not

20

permitted to move freely about her home"; and she "never [was] told she was free to leave or that she had a choice whether to respond to questioning." *Id.* at 136-38.

Those two cases largely control the result here. In fact, the circumstances in *Familetti* and *Faux* arguably constitute much closer cases: Swain does not allege that his movement was constrained in any way during the search of his residence, or, indeed, that he felt that he could not leave.[12] *See generally* Docket Item 40. Instead, he says that he answered the officers' questions "[b]ecause of the circumstances" without elaborating upon what those circumstances were. *Id.* at ¶ 3. In any event, even if Swain subjectively believed that he could not leave and was required to answer the officers' questions, that would not be enough to make the encounter "custodial." *See Faux*, 828 F.3d at 135 ("[I]ndividual[s'] subjective belief[s] about [their] status generally does not bear on the custody analysis.").

In sum, Swain has not alleged any facts showing that he was "in custody" when he was questioned by law enforcement on February 28, 2023, and his motion to suppress his statements on that ground therefore is denied.[13]

---

[12] On the contrary, Swain's first motion to suppress asserted that "after" he had been questioned, he "was advised that he did not have to speak with the officers and could depart the residence," which he then did. Docket Item 35 at ¶ 184. And while assertions in a motion—such as the unsworn declarations of Swain's counsel here— cannot be relied upon as facts in deciding a motion to suppress, *see United States v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990), Swain's contentions in his motion to suppress underscore what he does not allege in his affidavit: that the officers prevented him from leaving or even suggested that he could not leave, *see* Docket Item 40.

[13] Swain argues that *United States v. Glover*, 957 F.2d 1004 (2d Cir. 1992), supports finding that he was "in custody" because in that case, "the court found that the defendant had been seized when his property had been taken from him and not returned and he was never told that he was free to leave." Docket Item 52 at 8. But *Glover* involved an "investigative stop" under *Terry v. Ohio*, 392 U.S. 1, 21 (1968), and turned on whether the defendant had been "seized" in violation of his Fourth

### B.     Right to Counsel

Swain also argues that even if he was not "in custody" when he made the statements at issue, they nevertheless were obtained in violation of his right to counsel and must be suppressed for that reason. Docket Item 52 at 7-9. He says that Judge McCarthy's recommendation suggests that questioning would be appropriate "any time an individual was approached by the police and the police were advised that the individual unequivocally did not want to talk with the police without counsel." *Id.* at 8. And that, he says, would render the "prophylactic rules" that require the suppression of confessions obtained in violation of a defendant's Fifth and Sixth Amendment rights "irrelevant." *Id.*

It is true that defendants have both a Fifth and a Sixth Amendment right to counsel and that statements elicited by government officials in violation of either of those rights must be suppressed. *See McNeil v. Wisconsin*, 501 U.S. 171, 174-75 (1991). The problem for Swain is that neither his Fifth nor Sixth Amendment rights were implicated here. Put another way, the "prophylactic rules" Swain invokes simply have not been applied in situations like this one.

Instead, courts repeatedly have held that a defendant's Fifth Amendment right to counsel applies only when the defendant is subjected to custodial interrogation. *See*

---

Amendment right not to be stopped absent reasonable suspicion. *Glover*, 95 F.2d at 1009-10. That case therefore has no bearing on whether Swain's *Miranda* rights were violated here. *See Newton*, 369 F.3d at 673 (noting that "whether a 'stop' was permissible under *Terry v. Ohio*, is irrelevant to the *Miranda* analysis" (alterations omitted)). And more to the point, the mere fact that Swain's "property" had been seized pursuant to a warrant clearly is not enough to render the questioning at issue "custodial." *See Faux*, 828 F.3d at 133, 136-39 (finding that defendant was not in custody when she was questioned during search of her home pursuant to search warrant notwithstanding the fact that agents had taken her phone).

*Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) ("In its *Miranda* opinion, the Court concluded that *in the context of 'custodial interrogation*[,]*'* certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination." (emphasis added) (quoting *Miranda*, 384 U.S. at 444)); *Jackson v. Conway*, 763 F.3d 115, 136 (2d Cir. 2014) ("The *Miranda* safeguards apply only to 'custodial interrogations.'").  And the Sixth Amendment right to an attorney attaches only when "a prosecution is commenced"—that is, when "adversary judicial criminal proceedings [are initiated,] whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008) (first quoting *McNeil*, 501 U.S. at 175, then quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)); *United States v. Shvartsman*, 2024 WL 1193703, at *15 (S.D.N.Y. Mar. 20, 2024) ("[I]t is 'firmly established that a person's Sixth . . . Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.'" (alterations in original) (quoting *United States v. Stern*, 313 F. Sup. 2d 155, 165 (S.D.N.Y. 2003))).  Neither line of precedent— neither "prophylactic rule"—is relevant here.

As already explained, Swain was not "in custody" when he made the statements at issue.  *See* Section II.A, *supra*.  Nor had "adversary judicial criminal proceedings" yet been initiated against him.  *See Rothgery*, 554 U.S. at 198.  Indeed, Swain was not arrested or charged until March 2, 2023—more than a day after the search, *see* Docket Items 4 and 6—and a prosecution was not commenced at least until then, *see United States v. Moore*, 670 F.3d 222, 234 (2d Cir. 2012) (explaining that "the right to counsel generally attaches at the first appearance [by the accused] before a judicial officer at

which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty") (alterations, citations, and internal quotation marks omitted)). So neither the Fifth Amendment nor the Sixth Amendment require the suppression of Swain's statements.

Swain argues that his right to counsel attached when he told law enforcement that he wanted an attorney. But none of the cases Swain cites support that proposition in a noncustodial setting prior to the commencement of a prosecution. *See* Docket Item 52 at 7-9. And several cases suggest just the opposite.

In *Vado*, for example, the defendant moved to suppress a statement he made to law enforcement after he had—as the parties agreed—"unambiguously invoked his right to counsel." 87 F. Supp. 3d at 480. The court nonetheless denied the defendant's motion to suppress the statement. *Id.* at 481. It explained that "[b]ecause [the defendant] was not in custody for *Miranda* purposes [at the time he made the statements], his Fifth Amendment right to counsel had not attached, and the agents were not required to obtain a waiver of rights before questioning him" notwithstanding his request for an attorney. *Id.*

Likewise, in *United States v. Aguilar*, the court held that it "need not determine whether [the defendant had] requested counsel" before making certain statements—as he claimed—since at the time he "was not in custody for *Miranda* purposes, [and] his Fifth Amendment right to counsel had not attached." 2022 WL 3139100, at *1, *8 n.6 (E.D.N.Y. Aug. 5, 2022). And in *United States v. Smith*, the court denied a defendant's motion to suppress a statement obtained after—he said—"he had unequivocally invoked his right to counsel" on the grounds that "any [such] invocation . . . occurred

24

when [the d]efendant was not in custody."  2012 WL 5187922, at *7 (D. Vt. Oct. 18, 2012).  So even when a defendant explicitly requests counsel prior to the commencement of judicial proceedings, the right to counsel does not attach under the Fifth or Sixth Amendment unless the defendant is in custody.

In sum, Swain's right to counsel was not violated when he answered questions after he asked for an attorney.  And this Court therefore adopts Judge McCarthy's recommendation to deny Swain's motion to suppress the statements that he made on February 28, 2023.

## IV.    REQUEST FOR A HEARING

Finally, Swain argues that he at least was entitled to a suppression hearing before his motions were denied.  Docket Item 52 at 9, 14.  This Court disagrees.  "A defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on the claim, but must make a preliminary showing of facts which, if proved would require the granting of relief."  *United States v. Longo*, 70 F. Supp. 2d 225, 248 (W.D.N.Y. 1999).  For the reasons already explained, the facts set out by Swain in his affidavit, Docket Item 40, would not—even if proven—justify the suppression of his statements and the physical evidence here.  So the Court agrees with Judge McCarthy that Swain is not entitled to an evidentiary hearing.  Docket Item 47 at 4, 12.

## <u>CONCLUSION</u>

For the reasons stated above and in Judge McCarthy's R&R, Docket Item 47, Swain's motions to suppress, Docket Items 35 and 44, are denied.  The government

shall provide Swain with complete inventories of the items it has seized *both* under the February warrants and under the October warrant **by May 31, 2024**.  If the government uncovers additional items in connection with its continuing review of the Discord accounts, it shall promptly supplement that inventory.  Swain may file a renewed motion to suppress based on any inventories provided by the government.

SO ORDERED.

Dated:   May 15, 2024
           Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE